IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TIMERI NEITZKE, ) | |
| ) | Case No. 4:06cv3060 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| HUSQVARNA PROFESSIONAL ) | |
| OUTDOOR PRODUCTS, INC., ) | |
| ) | |
| Defendant. ) | |

Plaintiff Timeri Neitzke (Neitzke) brought this action against the defendant Husqvarna Professional Outdoor Products, Inc. (Husqvarna), alleging sex discrimination in violation of Title VII, 42 U.S.C. § 2000e-2 (Title VII) and the Nebraska Fair Employment Practice Act (FEPA), Neb. Rev. Stat. § 48-1101, et. seq. (Filing No. 14; Summary Judgment Exhibit (S.J. Ex.) 7 (Second Amended Complaint)). Before the court is Husqvarna's Motion for Summary Judgment. (Filing No. 49). Neitzke cannot establish she suffered an adverse employment action when Husqvarna denied Neitzke her choice of shifts. Additionally, no reasonable jury could find Husqvarna had a discriminatory motive or Husqvarna's legitimate reason for denying Neitzke her desired shift was a pretext for sex discrimination. Accordingly, the court grants Husqvarna's Motion for Summary Judgment.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**[1]

In October 1998, Husqvarna hired Neitzke for a position in Husqvarna's welding department. (S.J. Ex. 1, Deposition of Timeri Neitzke (Neitzke Deposition) at 15:7-9, 17:16-18:1). Neitzke worked as a press operator until August 31, 2000, when she was promoted to a position as a welder. (S.J. Ex. 2; S.J. Ex. 3, Declaration of Beth Wiseman (Wiseman Decl.) at ¶ 3; S.J. Ex. 4, Declaration of Rick Schwisow (Schwisow Decl.) at ¶ 5). Rick Schwisow (Schwisow) hired Neitzke, promoted her, and was Neitzke's supervisor throughout her tenure. (S.J. Ex. 1, Neitzke Depo. at 40:6-9; S.J. Ex. 4, Schwisow Decl. at ¶ 5). In July 2002, at the behest of Neitzke's husband and at no request from Husqvarna,

---

[1]To avoid redundancy, some of the argued facts are addressed only in the body of the analysis.

Neitzke left the welding department and transferred to a position in Husqvarna's warehouse. (S.J. Ex. 1, Neitzke Depo. at 38:14-24; 39:3-18).

When Neitzke was first hired, there was only one shift in the welding department, which ran during the daytime hours (day shift). (S.J. Ex. 1, Neitzke Depo. at 35:1-6). Around April 1999, the welding department added a second shift, which ran during the evening and early morning hours (night shift). (S.J. Ex. 4, Schwisow Decl. at ¶ 4). The night shift ran on a periodic basis from that point forward. (S.J. Ex. 1, Neitzke Depo. 143:15-144:4).

In July 2004, a day shift welding position became available. (S.J. Ex. 3, Wiseman Decl. at ¶ 8; S.J. Ex. 4, Schwisow Decl. at ¶ 7). Husqvarna posted the position throughout the company, inviting employees to request a transfer to the position. (S.J. Ex. 8). Husqvarna's practice had been to offer available day shift positions within a department to employees working on the night shift in the same department, before posting the position on a company-wide basis.[2] (S.J. Ex. 3, Wiseman Decl. at ¶ 9; S.J. Ex. 4,

---

[2] Neitzke controverts Husqvarna's assertion of this practice. See Filing No. 52, Brief in Opposition to Defendant's Motion for Summary Judgment (Neitzke Brief, at 5, ¶ 10). In controverting the consistency of the asserted practice, Neitzke cites the hiring of two male welders, Mike Warren (Warren), and Dennis VanLaningham (VanLaningham). Id. (citing S.J. Ex. 1, Neitzke Depo. at 88:15-89:16 and S.J. Ex. 15, Deposition of Dennis VanLaningham (VanLaningham Depo.) at 35:3-36:4). In her deposition, Neitzke testified Warren transferred from the assembly department to the welding department, and went directly to the day shift, rather than first going to the night shift. (S.J. Ex. 1, Neitzke Depo. at 88:15-89:16). VanLaningham testified he started on the night shift, but was able to move to the day shift soon after he started. (S.J. Ex. 15, VanLaningham Depo. at 7:8-17). Husqvarna submitted evidence Warren was able to transfer directly to the day shift because a day shift position was available, and the manager, Schwisow, was not aware of any welders on the night shift who wished to transfer to the day shift. (See S.J. Ex. 4, Schwisow Decl. at ¶ 14). Additionally, Husqvarna submitted evidence VanLaningham was, after initially transferring to the night shift, able to transfer to the day shift because a day shift position became available, and VanLaningham was the only welder on the night shift who Schwisow knew wanted to move to the day shift. (S.J. Ex. 4, Schwisow Decl. at ¶ 15). Apart from mere conjecture, Neitzke has provided no evidence Husqvarna's evidence is false. Indeed, Neitzke even testified she had no knowledge of Husqvarna's practice in this regard. (S.J. Ex. 1, Neitzke Depo. at 91:20-24). The party opposing summary judgment "must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (explaining the nonmoving party must "designate *specific facts* showing that there is a genuine issue for trial." (internal

Schwisow Decl. at ¶ 8). If more than one employee from within the department applied for the open shift, the most senior qualified employee was selected. (Id.). Husqvarna's written policy, although somewhat ambiguous, does not contravene this practice, and implies this practice represents the generally followed procedure. (S.J. Ex. 9 at 26).[3] Husqvarna claims it posted the July 2004 day shift welding position on a company-wide basis due to a misunderstanding on the part of the human resources department. (S.J. Ex. 4, Schwisow Decl. at ¶ 9).[4]

Neitzke applied for the posted day shift position in the welding department in July 2004. (S.J. Ex. 1, Neitzke Depo. at 82:7-85:5). Three other applicants were welders on the night shift. (S.J. Ex. 3, Wiseman Decl. at ¶ 12; S.J. Ex. 4, Schwisow Decl. at ¶ 11). Mike Sybrant, the night shift applicant with the most seniority, was hired for the day shift position. (S.J. Ex. 4, Schwisow Decl. at ¶ 12).

After the hiring, Neitzke did not know the position had been filled, and asked Schwisow if she would be interviewed. (S.J. Ex. 1, Neitzke Depo. at 87:4-12). Schwisow informed Neitzke the position had been filled. (S.J. Ex. 1, Neitzke Depo. at 88:2-6). Schwisow informed Neitzke she was welcome to return to the welding department on the night shift. (S.J. Ex. 1, Neitzke Depo. at 101:7-15). Neitzke understood if she returned to the night shift, she might later be able to return to the day shift when there was an opening.

---

quotation marks omitted) (emphasis added)). Without specific facts or reasonable inferences to the contrary, the court therefore finds Husqvarna's practice was to offer available day shift positions within a department to employees working on the night shift in the same department, before posting the position on a company-wide basis.

[3]The policy states, "Transfers within a department may be approved by department managers." (S.J. Ex. 9 at 26). This implies an open position may not be posted, given that immediately following this statement, the policy outlines the process for "*When* an opening is posted . . ." (Id. (emphasis added)).

[4]Neitzke controverts Husqvarna's claim that the posting was a mistake, arguing the company fully intended to consider applications from outside the department, and the claim of "mistake" is a subterfuge for Husqvarna's purposeful discrimination against Neitzke on the basis of her gender. (Neitzke Brief at 7, ¶ 12). This goes to the heart of the legal question regarding whether Husqvarna's proffered non-discriminatory reason for denying her the day shift position was pretextual. The court will thus discuss this factual dispute within the Analysis section when discussing pretext.

(S.J. Ex. 1, Neitzke Depo. at 102:12-20).  Neitzke called this understanding "a given" and that "anybody[] [would] be able to do that." (Id.).

Neitzke obtained employment at another company and, on October 14, 2004, Neitzke resigned her employment with Husqvarna.  (S.J. Ex. 1, Neitzke Depo. at 54:23-55:4).  Neitzke filed a charge of discrimination with the Nebraska Equal Employment Opportunity Commission and the Equal Employment Commission on December 15, 2004.  (S.J. Ex. 7 at ¶ 4).  Neitzke was issued a right to sue letter dated February 9, 2006.  (Id.)  Neitzke filed this suit against Husqvarna, alleging Husqvarna discriminated against her on the basis of gender when it denied her the day shift position, in violation of Title VII and FEPA.  (Filing No. 14; S.J. Ex. 7).

## II.   DISCUSSION
### A.   Jurisdiction

The court has jurisdiction over this action pursuant to its federal question jurisdiction under 28 U.S.C. § 1331, because this action arises, in part, under Title VII.  The court has jurisdiction over Neitzke's state law claims pursuant to the court's supplemental jurisdiction under 28 U.S.C. § 1367(a), which confers "jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

### B.   Standards of Review

The court may grant a motion for summary judgment when there is "no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A material fact is one which, depending on the applicable substantive law, might affect the outcome of the lawsuit.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The non-moving party "must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see Celotex Corp., 477 U.S. at 324.  An issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (citing Anderson, 477 U.S. at 248-49).

In ruling upon a motion for summary judgment, this court views the facts in the light most favorable to Neitzke.  See Dancy v. Hyster Co., 127 F.3d 649, 652-53 (8th Cir.1997).  To withstand a motion for summary judgment, Neitzke must substantiate her allegations "with sufficient probative evidence that would permit a finding in [Neitzke's] favor on more

than mere speculation, conjecture, or fantasy." Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (internal alterations, quotation marks and citation omitted). "A mere scintilla of evidence is insufficient to avoid summary judgment." Id.

Because the Nebraska Fair Employment Practice Act (FEPA) is patterned after Title VII, Nebraska courts look to federal decisions when construing FEPA. See Father Flanagan's Boys' Home v. Agnew, 256 Neb. 394, 401, 590 N.W.2d 688, 693 (1999); see also Malone v. Eaton Corp., 187 F.3d 960, 962 & n.3 (8th Cir. 1999). The court will therefore not discuss the FEPA and Title VII claims separately.

"In sex . . . discrimination cases, a plaintiff may survive a defendant's motion for summary judgment in one of two ways." McGinnis v. Union Pacific R.R., 496 F.3d 868, 873 (8th Cir. 2007). "The plaintiff may present direct evidence of discrimination, that is, evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Id. (internal quotation marks and citation omitted). Put differently, to establish direct evidence of discrimination, Neitzke must present "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was *more likely than not a motivating factor* in the employer's decision." Rivers-Frison v. Southeast Mo. Comm. Treatment Ctr., 133 F.3d 616, 619 (8th Cir. 1998) (quotation marks and citation omitted) (emphasis added).

"Alternatively, if the plaintiff lacks direct evidence of discrimination, the plaintiff may survive the defendant's motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." McGinnis, 496 F.3d at 873 (citation omitted). "Under this framework, the plaintiff bears the burden of establishing a prima facie case of discrimination." Id. (citation omitted).

"To establish a prima facie case of gender discrimination, [Neitzke] must establish (1) she was a member of a protected class, (2) she was qualified for her job, (3) she suffered an adverse employment action, and (4) there are facts that give rise to an inference of gender discrimination." Holland v. Sam's Club, 487 F.3d 641, 644 (8th Cir.

2007) (citation omitted). "[T]he plaintiff's burden is not onerous." McGinnis, 496 F.3d at 873 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)).

"The establishment of a prima facie case creates a presumption of unlawful discrimination, which in turn requires a defendant to come forward with evidence of a legitimate, nondiscriminatory reason for the defendant's actions." Id. (citation omitted). "If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is pretextual." Id. (citation omitted).

### C.   Prima Facie Case

For purposes of its summary judgment motion, Husqvarna concedes Neitzke has established the first two McDonnell-Douglas prongs of her prima facie case.[5] (Husqvarna Brief at 18). However, Husqvarna contends Neitzke cannot demonstrate she has suffered an adverse employment action, nor can she present sufficient facts giving rise to an inference of gender discrimination. (Id. at 18 & n.3).

#### 1.   Adverse Employment Action

Neitzke applied for the posted day shift position in the welding department in July 2004. (S.J. Ex. 1, Neitzke Depo. at 82:7-85:5). After the hiring, Neitzke did not know the position had been filled, and asked Schwisow if she would be interviewed. (S.J. Ex. 1, Neitzke Depo. at 87:4-12). Schwisow informed Neitzke the position had been filled (S.J. Ex. 1, Neitzke Depo. at 88:2-6), but told Neitzke she was welcome to return to the welding department on the night shift. (S.J. Ex. 1, Neitzke Depo. at 101:7-15). Husqvarna argues, because at the time Schwisow denied Neitzke the day shift welding position, Schwisow contemporaneously offered Neitzke a night shift welding position, Neitzke has, as a matter of law, suffered no adverse employment action. (Husqvarna Brief at 18-20).

In Tipler v. Douglas County, Neb., 2006 WL 1314328 (D. Neb. May 11, 2006) (No. 8:04cv470) (unpublished disposition), the court (Thalken, M.J.) faced the question of whether a transfer of an African-American female corrections officer from a day shift (running from 7:00 A.M. until 3:00 P.M.) to a night shift (running from 11:00 P.M. until 7:00

---

[5] Neitzke first concedes the need to establish a prima facie case, stating, "she must establish" the elements of a prima facie case for discrimination. (Neitzke Brief at 21 (citations omitted)). Neitzke later contends she has also proffered direct evidence of discrimination. Id. at 26-27. The court will address both methods of proving discrimination.

A.M.) constituted an adverse employment action. See id. at *1, *9-10. The court explained, "Acts short of termination may constitute adverse employment actions, however, not everything that makes an employee unhappy is actionable." Id. at *10 (citing Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997)). Rather, the court explained, "To be actionable, the employment action must be 'a material change in the terms or conditions of her employment.'" Id. (citing Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997)). The court noted, "Generally, a change in shift is not an adverse employment action." Id. at *11 (citing a string of circuit and district court cases). The court explained a "plaintiff must show more than a mere lateral transfer, [and] must present sufficient evidence that the transfer equated to a shift change that involves *changes in duties or compensation or can objectively be characterized as a demotion*." Id. (citing Pegram v. Honeywell, Inc., 361 F.3d 272, 284 (5th Cir. 2004) (internal quotations and citation omitted) (emphasis added)).

The plaintiff in Tipler argued the shift reassignment lessened her opportunities to obtain meaningful experience because working in a prison at night, when the inmates were mostly asleep, resulted in fewer opportunities to handle difficult situations or work with inmates. Id. at *12-13. Thus, the plaintiff argued this could lessen her ability to gain promotion. Id. The plaintiff also complained she would have to work more overtime hours because overtime assignments occurred more frequently on the late shift, that she would have to pay additional daycare costs, and that she experienced headaches and medical problems due to the late night hours. Id. at 13-14. The court found, however, these asserted harms failed to "convert her routine shift reassignment into an adverse action because such harms did not result in a material change to the conditions of her employment." Id. at *14.

This court has since reaffirmed and adopted the reasoning of Tipler. See Green v. Douglas County, Neb., 2007 WL 1291096, *2 (D. Neb. Mar 21, 2007) (No. 8:05cv573). The court recognizes both Tipler and Green are unpublished dispositions. The cases are, nonetheless, highly persuasive, and are supported by a wide array of authority from other circuits. See Tipler, 2006 WL 1314328 at *11 (listing cases).

Eighth Circuit cases are slightly less clear on this issue. Compare Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919-20 (8th Cir. 2000) (holding a reassignment to a less prestigious sales unit was an adverse employment action) and Zotos v. Lindbergh Sch. Dist., 121 F.3d 356, 359, 362 (8th Cir. 1997) (referring to a teacher's transfer from a

-7-

class for gifted students to a regular classroom as an adverse employment action) with Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994) (holding a job transfer resulting in fewer secretarial duties and more stress was merely inconvenient, was not materially significant, and was not an adverse employment action). However, in Fisher, the plaintiff suffered much more than the loss of a desired shift assignment. See Fisher, 225 F.3d at 919-20. Rather, the plaintiff suffered a change which "effectively diminish[ed] his title[,]" and "was placed in a position in which he sold to less lucrative clients and covered a smaller sales territory" thus diminishing his earning capacity. Id. at 920. In Zotos, the court was addressing the timeliness of the plaintiff's filing and did not analyze whether the transfer was or was not an adverse employment action, but simply asserted it was. See Zotos, 121 F.3d at 359, 362. However, the plaintiff in Zotos arguably would have faced different duties teaching in a regular education classroom, as opposed to teaching gifted students. See id.

Neitzke's claim is far more analogous to the one at issue in Harlston, where the plaintiff "suffered no diminution in her title, salary, or benefits." Harlston, 37 F.3d at 382. Apart from the inconveniences associated with a later shift, Neitzke was offered the same salary, title, duties and benefits. Further, the Eighth Circuit has clarified that "a transfer from one job to another is not an adverse employment action if it involves only minor changes in the employee's working conditions with no reduction in pay or benefits." Brown v. Lester E. Cox Med. Ctrs, 286 F.3d 1040, 1045 (8th Cir. 2002) (citation omitted).

Neitzke even admits, "It is amazing . . . there is support for the proposition that assignment to the night shift instead of the day shift is not an adverse employment action, however I have familiarized myself with the research and court [sic] have so found[.]" (Neitzke Brief at 23). Neitzke contends her situation is distinguishable from Tipler and Green and the precedents upon which those cases rely. Neitzke argues she was not technically transferred from the day shift to the night shift, but was directly denied the position she sought, and was "rejected for the welding position." Id. The court finds this distinction immaterial. Factually, Neitzke was not "rejected for the welding position." Neitzke admits, although she was denied the day shift she desired, she was contemporaneously offered the same welding position on the night shift. (S.J. Ex. 1, Neitzke Depo. at 101:7-15). Legally, it would be nonsensical for the court to adopt Neitzke's artificial distinction. Under Neitzke's proposed analysis, had Husqvarna hired Neitzke for the day shift position, and immediately transferred her to the night shift, Neitzke would have suffered no adverse employment action, yet by denying Neitzke the day shift

and contemporaneously offering her the night shift, Neitzke claims she has suffered adversely. The court declines to adopt this reasoning. To do so would create a meaningless hoop through which employers must jump in order to avoid liability. The court thus finds this case logically analogous to Harlston. Instead of being reassigned to a different position with no difference in job title, salary, or benefits, Harlston, 37 F.3d at 381, Neitzke was simply offered one position, as opposed to another, with no difference in job title, salary or benefits.[6] Neitzke has failed to demonstrate she suffered an adverse employment action and, therefore, fails to make out a prima facie case of discrimination.[7]

### 2.  Direct Evidence of Discrimination

Neitzke contends she has proffered direct evidence Neitzke was denied her shift of choice on the basis of sexual discrimination by a Husqvarna decisionmaker, Schwisow. (Neitzke Brief at 26-27). In support of this contention, Neitzke points to two alleged statements made by Schwisow. First, a fellow employee, Dennis VanLaningham testified he heard Schwisow state, "he didn't want females in the welding department." (S.J. Ex. 15, VanLaningham Depo. at 22:14-25). Second, another employee, Kerry Carney

---

[6]Similarly, "a transfer from one job to another is not an adverse employment action if it involves only minor changes in the employee's working conditions with no reduction in pay or benefits." Brown, 286 F.3d at 1045 (citation omitted). The court sees no reason, therefore, why *declining* to transfer an employee from one job to another *would* constitute an adverse employment action when the declination would result in no reduction in pay or benefits. Husqvarna did not decline to transfer Neitzke to the welding department, but only denied Neitzke her choice of shift.

[7]Viewing the evidence in the light most favorable to Neitzke, the court rejects Husqvarna's contention Neitzke failed to demonstrate "facts that give rise to an inference of gender discrimination," the fourth prong of a prima facie discrimination case. See Holland, 487 F.3d at 644. Neitzke presented some evidence another employee heard Schwisow say he "didn't want females in the welding department." (S.J. Ex. 15, VanLaningham Depo. at 21:19-22). Neitzke also provided some evidence Schwisow joked, "if he had a woman in the welding . . . department . . . no work would get done . . . because the guys would always be in her booth bugging her so they wouldn't get any work done." (S.J. Ex. 14, Deposition of Kerry Carney (Carney Depo.) at 62:12-25; 67:22-25). Although the court finds, for the reasons outlined in the following section, this evidence is insufficient to demonstrate pretext, for purposes of the prima facie case, Neitzke need only demonstrate "facts that give rise to an *inference* of gender discrimination." See Holland, 487 F.3d at 644 (emphasis added). Given this relatively easy standard, viewing the evidence in the light most favorable to Neitzke, the fourth prong of a prima facie case is satisfied for purposes of summary judgment.

(Carney), testified Schwisow had once joked, "if he had a woman in the welding . . . department . . . no work would get done . . . because the guys would always be in her booth bugging her so they wouldn't get any work done." (S.J. Ex. 14, Carney Depo. at 62:12-25, 67:22-25).

The court finds both of these comments legally insufficient to qualify as direct evidence of discrimination. First, the statement attributed to Schwisow by VanLaningham is entirely without context. VanLaningham provided scant information about the conversation in which the comment was allegedly made. (See S.J. Ex. 15, VanLaningham Depo. at 21-24). More importantly, VanLaningham admitted he did not recall when the comment was made. (Id. at 22:9-11). Without more, there is insufficient evidence linking the alleged comment to the decisional process. See Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1056 (8th Cir. 2007) (declaring discriminatory remarks, even when made by the company decisionmaker, were properly considered "stray remarks in the workplace" when "not connected to" the decisionmaker's adverse employment decision). Similarly, the statement attributed to Schwisow by Carney also lacks context. Carney testified the statement came "about the time . . . [Neitzke] . . . had applied[,]" but admitted she "d[idn't] recall if it was before or after." (S.J. Ex. 14, Carney Depo. at 63:15-20). Once again, without additional context, the comment can be considered little more than a stray remark, unrelated to the decisional process. See Elnashar, 484 F.3d at 1056.

The court recognizes that, viewing the second comment in the light most favorable to Neitzke, the comment might be considered at least temporally related to the decisional process. However, even if the court were to find the second comment sufficiently temporally related to qualify as direct evidence of discrimination, summary judgment would still be appropriate. No reasonable jury could find the comment represented a motivating factor in Husqvarna's decision not to offer Neitzke the day shift.

First, Carney herself even labeled Schwisow's statement "a joke," and testified that, although she had heard rumors other welders had made derogatory remarks about her, Schwisow "was always pretty good to [Carney]." (S.J. Ex. 14, Carney Depo. at 61:11-15, 67:17-24). Second, Schwisow personally hired, supervised, and promoted several women in the welding department. (S.J. Ex. 3, Wiseman Decl. at ¶5; S.J. Ex. 4, Schwisow Decl. at ¶ 6). Third, Schwisow was the decisionmaker who hired Neitzke to work in the welding department when she first applied in 1998, and later promoted Neitzke to welder. (S.J. Ex. 1, Neitzke Depo. at 17:16-21, 40:6-9; S.J. Ex. 4, Schwisow Decl. at ¶ 5). Fourth, when

Schwisow gave the day shift position to an employee on the night shift in the welding department, Schwisow contemporaneously offered Neitzke the night shift position *in the welding department*. (S.J. Ex. 1, Neitzke Depo. at 101:7-15). As the person who hired and promoted Neitzke as a welder in the first place, Schwisow is entitled to the "same actor" inference of non-discrimination. See Lowe v. J.B. Hunt Transport, Inc., 963 F.2d 173, 174-75 (8th Cir. 1992). In the discrimination action in Lowe, the Eighth Circuit upheld a directed verdict in favor of an employer, noting, "The *most important fact* here is that the *plaintiff was a member of the protected age group both at the time of his hiring and at the time of his firing*, and that *the same people who hired him also fired him*." Id. at 174 (citation omitted) (emphasis added). Thus, the Eighth Circuit concluded, "It is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired [Lowe] at age fifty-one had suddenly developed an aversion to older people less than two years later." Id. at 175. Similarly, it is simply incredible, in light of the weakness of Neitzke's evidence otherwise, that the Husqvarna official who hired Neitzke for the welding department, and later promoted Neitzke to welder, suddenly developed an aversion to hiring women, when that same official continued to hire women in the welding department and, when Neitzke requested the welding position, offered Neitzke a position *in the welding department* on the night shift. No reasonable jury could find discrimination in light of these facts, and the weakness of Neitzke's other evidence, as discussed further in the following section.

###    3.    Pretext

Even if Neitzke had established a prima facie case of employment discrimination, Husqvarna has met its burden of articulating a legitimate, nondiscriminatory reason for denying Neitzke the transfer to the day shift. Husqvarna explains its policy and practice was to afford the most senior qualified applicants from within a department the opportunity to move from the night shift to the day shift. (S.J. Ex. 3, Wiseman Decl. ¶ 9; S.J. Ex. 4, Schwisow Decl. ¶ 8). Absent direct evidence of discrimination, the burden shifts to Neitzke to demonstrate this non-discriminatory rationale for denying Neitzke's transfer request actually represents a pretext for discrimination. See Holland, 487 F.3d at 644.

In claiming pretext, Neitzke makes the following assertions: (1) Schwisow had been overheard making two remarks regarding not wanting women in the welding department (see Neitzke Brief at 7, ¶ 12 (citing S.J. Ex. 15, VanLaningham Depo. at 20:7-22:22 and S.J. Ex. 14, Carney Depo. at 86:1-24)); (2) Neitzke was not immediately told she was denied the position because of the company policy, but was only told she "didn't need to

-11-

be back there [to the welding department] smelling all that weld smoke," and explained overtime would be required in the welding department (S.J. Ex. 1, Neitzke Depo. at 98:23-99:6; see Neitzke Brief at 26); (3) Neitzke contends the cited non-discriminatory reason (seniority within the plant/company as a whole) is only used when convenient, and Husqvarna "reverted back" to using plant-wide seniority in order to deny another female, Carney, a position, while it did not consider Neitzke's company seniority (see Neitzke Brief at 26; 13-14, ¶ 27); and (4) men were allowed to move directly to the day shift, without having to first serve on the night shift (see Neitzke Brief at 26).

On Neitzke's first contention, for the reasons outlined in the previous section, the court finds no reasonable jury could find for Neitzke on the basis of Schwisow's alleged remarks.

As to Neitzke's second contention, viewing the evidence in the light most favorable to Neitzke, when Neitzke asked Schwisow whether or not she would be interviewed, Schwisow told her she "didn't need to be back there [to the welding department] smelling all that weld smoke[]," and explained overtime would be required in the welding department. (S.J. Ex. 1, Neitzke Depo. at 98:23-99:6; see Neitzke Brief at 26). However, the evidence indicates these comments were simply *part* of the conversation. Neitzke admits she does not fully remember the entire substance of the conversation, and further admits that, in the same conversation, Schwisow offered her a position in the welding department, but explained it would be on the night shift. (See S.J. Ex. 1, Neitzke Depo. at 101:7-15).

Neitzke's own testimony further demonstrates Neitzke understood people on the night shift would have the opportunity to move to the day shift when a position opened on the day shift. When asked if she was told that, if she came back to the night shift, she might later be able to transfer to the day shift when there was an opening, Neitzke responded, "Well, I mean, anybody's going to be able to do that . . . That's just a given." (See S.J. Ex. 1, Neitzke Depo. at 102:12-20). Based upon this evidence, no reasonable jury could find Schwisow's remarks indicate sexual discrimination, or that Husqvarna's practice of promoting night shift workers within departments to the day shift, before offering the job to other employees, was not actually followed.

Regarding Neitzke's third contention, Neitzke argues pretext is apparent because Husqvarna "reverted back" to using company seniority in order to deny another woman,

Carney, a position, while Husqvarna did not consider Neitzke's company seniority. (See Neitzke Brief at 26, 13-14, ¶ 27). Neitzke points to nothing in the record indicating this is the case, and appears to misunderstand Husqvarna's asserted practice. Husqvarna's asserted policy is that (a) employees *within a department* are given priority to move between shifts *within that department*, and (b) company seniority is generally utilized to determine which employee within the department will get the alternate shift opening, *if* more than one department employee desires the alternate shift. (S.J. Ex. 3, Wiseman Decl. at ¶ 9; S.J. Ex. 4, Schwisow Decl. ¶ 8). Neitzke concedes the man hired ahead of Carney had more company-wide seniority (Neitzke Brief at 13-14, ¶ 27), but complains Neitzke's seniority was not taken into account. This fails to recognize that, under Husqvarna's policy, Neitzke's seniority was irrelevant given the circumstances of the hire. Because an individual *already in the welding department* on the night shift applied for the newly opened day shift, he was given priority over those outside the department, *regardless of seniority*. The man selected was compared to the other applicants presently working within the welding department and, from that group, he had the most seniority. (S.J. Ex. 3, Wiseman Decl. at ¶ 12; S.J. Ex. 4, Schwisow Decl. at ¶¶ 11-12). Neitzke's comparison is, therefore, neither valid nor relevant.

Finally, as to Neitzke's fourth contention, pretext could be shown by demonstrating disparate treatment, that is, similarly situated males were treated preferentially. See, e.g., McClure v. Career Sys. Dev. Corp., 447 F.3d 1133, 1137-38 (8th Cir. 2006). However, Neitzke has presented no evidence of preferential treatment. Husqvarna submitted uncontroverted evidence the men who either transferred directly to a welding department day shift, or transferred to the night shift and shortly thereafter moved to the day shift, did so because a day shift position became available, and management was aware of no other night shift employees who desired the day shift position. (See note 2, supra). Husqvarna's practice was thus followed, and Neitzke has not demonstrated similarly situated male employees received preferential treatment.

### III. CONCLUSION

For the reasons outlined herein, as a matter of law, Neitzke has failed to demonstrate she suffered an adverse employment action. Additionally, even viewing the record in the light most favorable to Neitzke, no reasonable jury could find either direct evidence Husqvarna had a discriminatory motive for denying Neitzke her choice of shifts, or Husqvarna's legitimate, non-discriminatory explanation for the denial was pretextual.

**IT IS THEREFORE ORDERED:**

1.	Defendant Husqvarna's Motion for Summary Judgment (Filing No. 49) is GRANTED; and

2.	A separate judgment will be entered dismissing plaintiff Neitzke's Second Amended Complaint (Filing No. 14), with prejudice.

DATED this 2nd day of January, 2008.

> BY THE COURT:
>
> /s/ William Jay Riley
> _____
> WILLIAM JAY RILEY, Circuit Judge
> Sitting by Designation